Next case on the calendar is United States v. Monreal-Miranda and Guido Rezaga-Flores. Counsel. Good morning, Your Honor. May it please the Court, my name is Myrna Rodriguez-Spears and I represent Mr. Monreal-Miranda. We will reserve five minutes of our time for rebuttal. With the Court's permission, I'd like to address the issue of the enhancement that the court, that the district court imposed on Guido Rezaga-Flores. In this case, the district court's statement in imposing the enhancement failed to encompass any of the factual credits, predicates of a perjury charge, failed to meet the standard that the United States Supreme Court set forth in the United States v. Dunnegan. The court's statement in totality was that based on the statement of the defendant at trial and at other times, that there was a basis for an upward adjustment under obstruction. The district court failed to find that Mr. Monreal-Miranda had made a false statement, that he had done so willfully, and that that statement was material. The district court, in fact, failed to find, to identify any particular statement that Mr. Monreal had made and the particular proceeding or nature of the statement that he may have made that justified the imposition of the obstruction of justice charge. The district court, rather, made a sweeping statement that I don't believe even could be characterized as a perfunctory finding sufficient to allow this Court to review the record. It failed to give the Court really any meaningful basis to review the record to see if a type of perfunctory finding, as this Court has said in Opplinger, would be sufficient to justify the enhancement. This Court recently stated in United States v. Jimenez, and again reiterated that in imposing the obstruction of justice charge, the district court has to explicitly find each one of the factual predicates that the United States Supreme Court has stated in Dunnegan, and the district court in this case simply failed to do so. On the perjury, it seems that clearly the Court didn't lay out what was required under the case law, but I read the government's brief as arguing that the enhancement might have been based kind of on alternative grounds, other obstructive conduct. And I would appreciate hearing your view of that argument. Yes, Your Honor. I have several points to make about that. First of all, the government's argument illustrates the complete lack of specificity in the district court's statement and therefore indicates why remand is, we think, necessary in this case so that the court, the district court may identify the basis for the enhancement. Second, the government argues that there were two areas or two proceedings generally during which the appellant may have made false statements. One of them was during the motion to suppress hearing, but of course, those statements were also made under oath, and therefore, I would think that Dunnegan would apply equally to the motion to suppress hearing as it does at any statements made under oath at trial. And the second sort of general basis of just a or argument that the government presents was that Mr. Morreale had denied his general involvement. Those were post-arrest statements in which he generally denied involvement in the offense, and there the government does not cite any case law under which the Supreme under which this Court has upheld the application of those, of the enhancement when a defendant just generally denies involvement in the offense post-arrest. The government attempts, I believe, to say that there was a substantial hindrance of its investigation, but the fact of the matter is that this was the investigation of this case lasted a couple of hours. It was surveillance that took place on a hotel where the border patrol agent saw two vehicles leave. They followed those vehicles and stopped them within a matter of hours and interviewed those persons, the defendants and the material witnesses. So I don't believe that the government really can state that Mr. Miranda's, Mr. Morreale Miranda's general denial of involvement substantially hindered its investigation of this case. Roberts, so if we were to agree with you, are you just asking us to remand for resentencing on this issue? Yes, Your Honor. Yes, our request is that this be remanded so that the resentencing and with instructions to the court to make the specific findings necessary to justify the enhancement. Our other argument is the sufficiency of the evidence in this case, and our argument is that the evidence presented by the government merely showed that Mr. Morreale Miranda was associating with co-conspirators, but there was no direct evidence of the fact that he actively participated or actively agreed to join the conspiracy. It shows that he was present at the motel and present in with one of the co-conspirators, but no – there was no direct testimony of any agreement that he made to transport or to harbor the aliens, and when you compare that with some of the cases in which this Court has held that there was insufficient evidence to support the conviction, notably Batista Avila, where there was much more participation of the defendants. In that case, our argument is that this simply failed to meet the standard. And I'll reserve the balance of my time for everybody. Thank you, Your Honor. May it please the Court. My name is Brenda Dabdue Caballero, and I represent the co-defendant, whose name is Mr. Hidalgo Vida Urazaga Flores. And our issues are different from Mr. Morreale Miranda. We have one issue before the Court. That issue is that the same district court in – during the trial proceedings failed to hold an investigative or evidentiary hearing regarding the issue of the sleeping jurors. The government's argument is that he did ask questions of counsel and of the actual juror that the trial attorney, which was myself, alleged to have been asleep. I, several times, informed the Court that I believed another juror that was sitting in between the two sleeping jurors, as I will point out. So is there anyone other than the other juror that you specifically asked the Court to question? Yes. I told the Court at least two, maybe three times, that I felt that the court staff Court staff is a pretty vague general term. Was there anyone in particular that you thought had knowledge of this? Well, there is the court reporter and the clerk that was in the courtroom are the staff that I was referring to. The judge never asked, and I never specifically stated who there was, but in the courtroom, there is only the judge, the court reporter, the clerk, and the interpreter. That is all of the court staff. And I informed the Court that court staff, that I believed court staff as well noted that the juror was sleeping. And the point that I want to make to the court, to this panel, is the fact that it's an appearance of justice that we're trying to preserve, and we want to hold the public to respect. We know that jury duty isn't something that's highly looked upon, isn't something that people want to do all the time. And they do it grudgingly, and it's not something they want to do. And I think it's important, and this is an opportunity for the court to highlight how important it is to uphold that appearance of justice. Where we came down to in the minimal, and I say minimal hearing that we did have was first, the district court judge indicated that we could ask the middle juror, which was Juror Potvin. Juror Potvin was sitting in the middle of both of the jurors. And I informed the court that I thought she noticed them. I thought she looked at her and saw her sleeping. And I asked the court to question this juror. What the court concluded was, we're all speculating here. I was submitting to the court that the juror was sleeping. The government was submitting to the court that the juror was not sleeping. One of the jurors that I first noted to the court was sleeping. The government adamantly said the juror was not sleeping. It turned out that juror was sleeping. That was Juror Whitney. And I also saw the other juror sleeping, Juror Saul. The government also adamantly said that that juror was not sleeping. So the judge said, how can we tell? We asked her, she indicated she wasn't asleep. But if you look at the actual transcript, the judge himself, he didn't, he, the judge himself said to her, you weren't sleeping and you heard all of the, all of the evidence, and she just said yes. So it wasn't like, he, he, basically, it was like a leading question that he gave. Would you ask her what the, what the witness just testified to? Well, not specifically, but something a little more not as leading as, as the judge did in this case. He said, you heard all the evidence, and you weren't asleep, and she just basically said yes. But then I thought you had an opportunity to ask questions of that juror, correct? That's correct, Judge. And it seems to me that you'd want to, to set the record straight. In the face of that denial, it was incumbent upon you to ask questions. Well, I would agree that that's how it would appear at first sight. However, I am the attorney for the defendant. One of the other jurors that we had questioned was very offended at the, the proceedings. How the, and this is also in the transcripts, that juror, Whitney, was very offended as to the fact that he was brought in with the attorneys, and that he was questioned as to whether or not he was sleeping. The, the judge's clerk informed us of that. So I, I think I was, and I indicate this in the, in the transcripts as well, kind of in a catch-22. I mean, if I start asking questions almost to the point where it becomes a cross-examination, I mean, she had already said, no, I wasn't sleeping, and yes, I heard all the evidence. Then I'm going to have to kind of be in a position where I have to cross-examine her and get the information that I want. I mean, I, I appreciate that point, but it seems to me that the question, that everything is done with that witness, the alternative is to say to the judge exactly what you're going to do in a catch-22 position, but here's a series of things you could ask this juror, because just, you know, like they asked, was it Mr. Whitney or something? Did you miss anything important? No, I'm sure I didn't. You know, whatever. I mean, that's a kind of a ridiculous question, of course. But to have the judge give the judge a series of questions to ask that juror, see, we're now kind of faced with this situation where we have kind of the denial by the jury, and so I think what we have to decide is whether the judge should have asked different people. I mean, is that kind of what it boiled down to, whether he abused his discretion? I think so. However, I agree with you. When I was reading everything in preparation for today's hearing, I also agree it kind of would just kind of sat there with the juror, Sal, that denied it. And I was thinking, what else could we have done? I didn't want to be put in a position where if she – the determination is that she wasn't asleep, you know, how is that going to reflect upon me and my client? And so – but I agree with you that it seems like the – we should have – if I wanted additional questions asked, we could have done it in a way where it was done through the judge. That's done a lot during voir dire. Some of the judges will not allow us specifically to ask questions, but we present our questions to them. And I agree that is something that I think should have been done. But as well, on top of that, Juror Potvin was there, and I had – I told the Court that I thought she was sitting in the middle of both of the sleeping jurors. And the judge said, well, what does she have to add that we can't? Everybody's speculating. Well, she gets to go in the back, and they all talk when they're back there, you know, very easily. Juror Salker told her, I was dozing. If you see me dozing, you know, nudge me. You know, she had a very different perspective than we had. And I think case law indicates that while we don't ask the jury about the deliberative process or anything like that, we could have asked her, do you have any knowledge about whether or not Juror Salker was sleeping. And this is important, moreover, because as the government is going to argue, and they argued in their brief, they indicate, well, we're not – the defense isn't arguing sufficiency of the evidence. And there was sufficiency of the evidence, and so no harm, basically. But what I want to highlight to the Court is that, again, the appearance of justice and my client's right to a fair and impartial jury that is awake and able to process all of the information. And on top of that, it is not the sufficiency of the evidence, but the credibility of the jurors that we have. The juror indicated that she hadn't fallen asleep. If it came out that she had fallen asleep, then that has way farther implications as to whether or not she told the truth and she's a trustworthy and impartial juror. And I think that's where the importance lies in the fact and the burden on the district court judge to go further. And he indicated we can ask Juror Potvin. And I did indicate at that time, I said if we don't do this factual inquiry, it's an appealable issue. We leave it open. And so you're down to four minutes for the rebuttal. Okay. I just wanted to make that last point that I did indicate how important it was to lay that issue to rest. Thank you. May it please the Court, first law in the United States, the appellee in this matter Going first, I wanted to clear up a couple of things in the appellant's reply brief as to Mr. Monreal Miranda. It stated that the defendant disagreed with the characterization of the evidence in this matter, that the defendant actually had told the defendants to lie down in the vehicle. I would point the court in the direction of Exhibit 8 at approximately minute 2415. The questioning went as follows. What happened when the defendant, referring to the defendant Monreal, returned to the room to pick you up? He told us to get in the van located downstairs. Question, when you say you're referring to the defendant, when you say he, are you referring to the defendant? That's right. Question, what happened after he told you to get in the van? What is stated? Well, nothing. He just told, he told us to lie down. More people got in soon after we were stopped. Question, when you say he told us to get in and lie down, is he referring to the defendant? That's right. That, for clarification purposes. So the government's brief is correct as to that. Now, as to Exhibit 9, it is true that that particular material witness, alien, did say that the defendant came to the room, said to hurry up and get in the truck, when the question was asked, who told you to lie down, various voices. So. One defendant said, one witness said the defendant, the other one said he didn't know. He said various voices, which could have included, but that's all speculation. So that is accurate. There's also that there was only an understanding, the defendant says there was only understanding that they'd be taken to Phoenix on Exhibit 8 at approximately minutes 18 to 19. It says the defendant told the group to wait in the room and they'd be taken to Phoenix. So again, the government's brief is accurate. And moving now on to first the sufficiency of the evidence argument. Looking at the evidence in the light most favorable to the government in this particular matter, there is overwhelming evidence that the defendant was rightfully convicted of the three offenses. And in looking at the Bautista Villa, which we'll get to in just a moment, we can see that there is a lot more evidence here than in that Bautista Villa, which the government conceived was correctly found to have insufficient evidence. This isn't a matter in which there's just one fingerprint on a container of, say, narcotics in someone's house. No connection showing that that person knew the marijuana or narcotics was in the container or that the person was in some type of drug conspiracy. In Bautista Villa, what had gone on is that you had four individuals, two of the people were in the midst of the conspiracy. They were tape recorded. They observed loading the narcotics and unloading out of the vehicle. The two that the court found had insufficient evidence were people that had been in the car that had been alleged had had the cocaine or the narcotics in it, but there was no connection showing they knew the drugs were in the car. In addition, they were just at the motel room. They were not on the tape. They were not involved unloading it. So there is a problem with sufficiency of the evidence in that particular matter. In this particular matter, there is boundless amounts showing that the defendant knew and was part of this conspiracy, aided and abetted the transportation of illegal aliens and harbored them. First, we have the defendant showing up in the original location where the material witness undocumented aliens were, right in the same place that the material witnesses discussed where the said that they'd be picked up when they came into the United States illegally. He then drove them to the motel room. He had rented that motel room, room 228, that is in the supplemental excerpt of record as number two. He took them to that room, told them to wait, and they'd be taken to Phoenix. He brought them food. He didn't have them go out to lunch, but he had them hiding in that particular location. The following day, he arrives at the motel with the other co-conspirators. He arrives there all at the same time. He goes up into the room as observed by Agent Flores, who's watching this, and as the material witnesses testified. Went into the room for approximately two minutes. During that time, you have the testimony of the material witnesses talking that he told them to hurry up, get into the vehicle, and ask for Exhibit A, and to lie down in the vehicle when they got inside. He then left the room. There was testimony from Agent Flores that he led them to that particular van that they were then transported in that was later stopped, in which the aliens were laying practically all over each other. He was also the passenger of a vehicle in which there was testimony that he was acting as a decoy vehicle from Agents Barrett and Agent Flores. In addition, as United States v. Kenney and United States v. Scholl says, when a defendant elects to testify, he runs the risk that if he is true. And his testimony was unbelievable. He stated that he only picked up two people from the parking lot originally, when, in fact, both the material witnesses testified there were four. And he also stated that he had never gone in the room on the day that he got picked up by the van that was going to transport him. He just said that he looked in quickly when he had testimony from Agent Flores that he had gone in for approximately two minutes. Looking at all this, all this is active participation. This is not the situation with just one fingerprint or people just happy to be there in the wrong place at the wrong time. This is showing all active participation to show transportation and harboring that there was agreement. The defense also states that this was not a situation where there's an explicit agreement. There's it does not need to be an explicit agreement. Does not have to be a contract signed with John Hancock's name on it. The case law states under United States v. that it can be inferred. And under Sanchez Murillo, it can be a conspiracy sustained even if the defendant's connection to conspiracy is slight. And we have the case also saying that bringing food to aliens can be reasonably construed as acts of furtherance of the conspiracy. And that's what we have all here. We have not only just the bringing of food. We have all the other things. Looking at each of the things I just talked about, picking them up, driving them to the Coming back the next day, telling them to get in the car, telling them that they needed to lie down in the car, being in the decoy vehicle, even in isolation individually. These are the type of things that would show acts of furtherance. But taken together, it's overwhelming that there's sufficient evidence to show that the charges of conspiracy, aiding and abetting transportation, and also the harboring were completed. Now, going into the obstruction argument, the government has submitted that the district court's ruling can be sustained by anything within the record. And what the defense has basically said is that there is only one thing that can happen here, and that's perjury. The government agrees that if it is just found specifically that this is just perjury, perjury, perjury, that the mandates of Dunnegan and Jimenez must be But looking at the non-exhaustive list that is stated within the sentencing guidelines, you have subsection 4B, committing, suborning, or attempting suborn perjury. That's just one. Now, as for subsection 4F, providing materially false information to a judge or magistrate, that is satisfied here, as well as G, 4G, providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the incident offense. We have discussed in our brief that at the Which Where did the judge find these things? On which basis did the judge rely on? Which ground? It is not clear from the record. It's not clear. But as United States versus $25,000 U.S. currency states, that it can be upheld if there is a reason found in the record. And the record does provide that. The defendant, during the material, during the Miranda hearing, said, hey, I didn't sign that form. The form I signed was in English. Then during the trial states, oh, yeah, I did get my Miranda rights, and I did sign that form, showing that that was material false statement to a magistrate or judge, and it's material in that it went to the judge's decision whether those statements were going to go in. As for the statements early on after Miranda, when the defendant was just for approximately 10 minutes at the testimony, came out saying, I don't know anything about alien smuggling operation. I don't know. I don't know anything. That is particularly interesting because what the defense has argued is that there actually has to be actual obstruction. But in the So, I mean, just to be clear, your position then is that even though the judge didn't point to any of those things, that we should go through the record and try to figure out if there's some other basis, and we, in effect, should be both fact finder and determiner of law on obstruction of justice? In looking at United States versus $25,000 United States currency, I believe that that would be appropriate because the record does provide a viable basis for that obstruction enhancement. And going now to the The statements that you're talking about, were they all made under oath? That is not true. The statements that were made at the Miranda hearing were under oath. Okay. And the statements made during trial were made under oath. However, the statements made originally to the Board of Prolations in this Miranda statement were not made under oath. So I think that is a distinction that perjury does require that it be a willful, material, false statement made under oath, whereas with the statements made under Miranda initially, they didn't need to be under oath. And that's the distinction Jimenez and Dunnegan both say. For perjury, perjury, perjury. Wouldn't you think they'd have to be material, at least? Yes. And I think that they were material. It was material. Why wouldn't you have to have a finding that they're material if you have to have a finding that they're material in a perjury case? I mean, in the case of using perjury testimony as the basis for obstruction, the judge has to say it was material. I think why wouldn't he have to say the same thing about the other statements? Because the distinction would be that you would allow that sometimes there could be statements made to a judge or to law enforcement that would not be under oath, such as someone coming to a judge and they're not under oath, but don't they have to be material? They are material. Why doesn't he have to make that finding for the ones that are not under oath, just the way he does for the ones that are under oath? It's the same requirement of materiality. I think because what the guideline states is that here's what you need for perjury and here's what you need for a material false statement. I think that the case law just talks about perjury, and because there's no case that is not under oath, it doesn't apply to sections F and G, or to a judge or to the law enforcement, that specifically in looking at the verbiage, because it talks about perjury, perjury, perjury, that the same mandates of Dunnegan and Jimenez don't apply to sections F and G. The probation officer's recommendation was that he made his – the obstruction was appropriate because of his testimony at trial was false. That is true. And as for the sleeping juror issue, going to that, looking at the standards of review, I think they're very enlightening. The denial of a misdraw based on juror misconduct is an abuse of discretion. That's United States v. Mill. And looking at the court's findings related to juror misconduct, it's a clear-air standard, and that's the MATA. By Asteros, substantial weight is accorded to the judge's conclusions, United States v. Madrid. And the judge has considerable, not just discretion, but considerable discretion in determining the extent of the hearings regarding juror misconduct, United States v. Barrett. Going through this even further, even if a juror is found to be asleep, no new trial is necessary if the juror did not miss essential parts of the case and was able to fairly consider the evidence. And the court's review is limited whether there was a determination that the defendant's Fifth or Sixth Amendment rights to an impartial jury are. He's been deprived of those, and that's Springfield. Looking at this situation, and just going first to the characterization by defense counsel, that I adamantly stated that Mr. Whitney was not asleep. The question was asked, did you observe Mr. Whitney sleeping? Government did not observe it and did not see that and found there was no basis. Now, when he was brought in and he did say that he had missed some parts of the thing as part of the trial, the government did say, we'll have to submit on that. Now, talking about the extent of these hearings, we did bring in juror Solow, and the questions went as follows. I saw the questions. I just have to say, I mean, we have to give broad leeway to the judge, but I have to laugh when you say to somebody, were you asleep? And they say, no. I mean, because if they were asleep, they may or may not. You know what I'm saying? And there is this, did you miss anything important? Nope, didn't miss anything important. When I was sleeping, it was all very uninteresting. I mean, I understand what the judge was doing, but I do have to say that I had to smile during, do you feel you missed anything? Nope. So I'm kind of like perplexed by this, and maybe it really boils down to a standard of review, because, you know, the judge was making an effort to get to the bottom of it, but it just seems like an odd kind of colloquy, that's all. What is most telling here, though, is defense counsel, co-defense counsel, Douglas Zanes for Mr. Monreal Miranda. He said he was unsure of his sleep, but he did see her taking notes. So combining that, plus her unequivocal statements, I was not sleeping, I didn't miss anything, it's very clear. What more could you do? Oh, it's obvious what more you could do. You could ask the other people who were there. But they're not the person that's actually sleeping. And when she said that she's missed nothing. Can only ask the person who's sleeping? Well, when someone's been taking notes, been observed taking notes, and says that, they're the best person that would know. Just like if you had a doctor and they say, do you, you know, how do you feel right now? I feel great. I think that's the best person to be able to tell if they say you feel great, rather than a third party who's looking at someone saying, well, they look like they might not feel so great. And that's exactly the type of speculation and surmise that. So if a juror who is sleeping, who has been asleep for 20 minutes, lies and says I was awake the whole time, you can't ask anybody else? Or it doesn't really even lie, does it? Since they were asleep, they didn't know. That's all speculation and combined with governments. Your position is the only person you should ever ask is a juror. But that's not what happened here. I didn't ask you what happened here. I said, your position is that the only person you should ever ask is a juror. That is not my position. My position was that the person who is actually sleeping is the best person to ask. And what happened here was not only was the juror asked, but other courtroom participants, being defense counsel and the government, were asked. And their observations were noted. You said you didn't know what else he could have done. And I said he could have asked the other people that the counsel mentioned, the court staff. He could have. So there was something else he could have done. Whether he was required to is a different question. That is correct, Your Honor. And looking at this, there was the investigation. And looking at that, it's within the court's discretion to the extent to have these hearings. And going through, also Barrett talking about that even if the juror was asleep, which the government does not concede in any way, the witness did not hear the testimony about Mr. Vitarazaga-Flores, in which his confession came in, talking about that he was to be paid to assist in the transportation of illegal aliens, the observations of Agent Flores and Agent Barrett. None of those allegations were there. And also his confession, he was to be paid for a debt previously owed to him. And he admitted that he had gone into room 133 that corroborated Agent Flores' testimony, that he had seen Mr. Vitarazaga-Flores go into that room and bring out the aliens into the van. Looking at all that. Just so I can understand the setting. When did this all take place? In the afternoon? This all took place during the daylight hours, I believe, in the around 2 or something in the afternoon. Afternoon. Or around noon or somewhere. I don't know. Around that time of the day. I can't remember exactly. At the Motel 6 down there. No, no, no, no. I'm talking about the incident of the juror sleeping in the courtroom. Was this after the whole thing occurred? When was it brought to the judge's attention that the juror was asleep? It was brought up one day towards the end of the day. And the other day it was brought after, I believe, the video depositions were played towards the end of the day, after lunch. And I believe that was the time. So the alleged sleeping took place while the videotaped depositions were being played to the jurors? That's correct. And they are on video screens right in front of the jurors. So they'd be looking down at them. And looking at all those facts. The court didn't abuse its discretion. And there's no clear error here in its determination, looking at all the facts together. Did the judge ever say if he saw if the jurors were sleeping? I don't believe that he said that he had seen any of the jurors sleeping. Any questions on either the matter of sufficiency, obstruction, or the sleeping juror? Thank you, counsel. Thank you, Your Honors. Very briefly, Your Honor, as to Mr. Monreal-Miranda, I would point out that many of the factors that the government's counsel has presented to the court as to Mr. Monreal-Miranda's alleged participation occurred on there were actually several counts involving   There was one on September 4th, I believe, and September 5th. And Mr. Monreal-Miranda was acquitted of all of the charges related to the first day. That would have been the day that he picked up the people and brought them lunch. And my other point is simply, as Judge Pius pointed out, the context of the enhancement of the obstruction enhancement point occurred after the PSR specifically talked about his statements at trial. And that was the discussion that was held and objected to at the sentencing hearing. And as Judge Reinhardt has pointed out, if, in fact, the government's position is that any false statements given to law enforcement officers, the guidelines requirement that there be a substantial hindrance to the investigation, and I think that encompasses the materiality aspect of any statements made at that time. Thank you. Just briefly, I just wanted to reiterate the fact that I think the government is trying to color the issue of the sleeping jurors with the sufficiency of the evidence. And I don't believe that we can just rely on the sufficiency of the evidence here. We are entitled to an impartial jury and a jury that is an alert and observing and processing all of the evidence that is presented. It was presented during the material witness depositions. If the evidence wasn't material or substantial, then why is it a material witness deposition? It's almost an oxymoron. Their depositions must have been material or they would not be called material witnesses. What I want to highlight again is that the fact that the judge, the lower court judge, has a responsibility to uphold the proceedings. And the lower court judge was told very clearly by myself, I indicated that I saw the jurors were sleeping, that my client would be prejudiced because of the lack of due process and juror misconduct. And this is all on my excerpts of record on page 14. And I said I would ask the court, I think if we don't ask the jurors, we leave it open for an appeal issue. I believe some of the case law that I saw is that we need to have a question and answer session from the jurors. If I believe I am not the only one that saw them sleeping. Juror Saul slept, her eyes were visibly closed and she appeared sleeping more than once. It was several times. The same with Juror Whitney. I believe other people in the courtroom here saw them. I think it would be appropriate to ask them. And depending on what they said, we would proceed further with other witnesses that may have seen the jurors. I think the fact that I put it out right there for him very clearly, and this was after I had read through the case law, read Rommel's, which in that case the juror came up to the judge and indicated he had been asleep. And the judge didn't bother asking any other questions. In that case, it was clear. The juror himself told him that he was asleep. But in that case, the Court looked at everything. The fact that the juror said he was asleep and there was other people, a further inquiry that was made. And I think that's the bottom line in this case, is that the further inquiry should have been made. And it should have been made at that time. And we're asking the Court to remand and retain jurisdiction while we have a hearing on the proceedings to determine whether or not the other jurors observed this conduct. Thank you. Thank you. The case, just argued, will be submitted. The final case of the morning is
judges: Reinhardt, McKeown, Paez